

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CHARLES A. CRAWFORD,       :

        Plaintiff,       :      CIVIL ACTION

             :

      v.             :

             :

MICHAEL ASTRUE, COMMISSIONER   :     NO. 08-1160

OF SOCIAL SECURITY,         :

             :

        Defendant.      :

**FILED**

APR 1 ~ 2009

MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

## MEMORANDUM

BUCKWALTER, S.J.                                   April 15, 2009

Currently before the Court are the Objections of the Defendant, the Commissioner of Social Security ("Commissioner"), to the Report and Recommendation of United States Magistrate Judge L. Felipe Restrepo. Having engaged in a thorough review of the Objections, the Magistrate Judge's Report and Recommendation, the certified administrative record of evidence, and the various briefing by the parties, the Court sustains the Objections and affirms the decision of the Commissioner.

## I.   PROCEDURAL HISTORY[1]

Plaintiff Charles Crawford, who was then thirty-nine years old, filed a protective application for Supplemental Security Income ("SSI") on December 15, 2004,[2] pursuant to Title XVI of the Social Security Act. 42 U.S.C. § 301, *et seq.* (R. 41-43.) Plaintiff alleged disability as of February

---

[1] For ease of discussion, citations to the administrative record will be referenced as "R. [page number]."

[2] This application reflects Plaintiff's seventh request for Social Security benefits. (R. 14.)

3, 2003, based on "Hiv+, right leg ankle, [h]and injury, spleen removed, [and] depressio[n]." (Id. at 41, 47.) The state agency denied his claim on May 20, 2005. (Id. at 31-34.) Upon timely request for a hearing and appointment of a representative, an administrative hearing was held before Administrative Law Judge ("ALJ") Margaret Lenzi, who also denied benefits. (Id. at 13-24, 29, 36, 181-206.) The Appeals Council dismissed Plaintiff's request for review on January 4, 2009. (Id. at 3-5.)

On March 10, 2008, Plaintiff initiated a civil action in this Court. Upon consideration of the record and the parties' oral argument, Magistrate Judge L. Felipe Restrepo filed a Report and Recommendation ("R&R") suggesting that the case be remanded for the ALJ to: (1) follow the appropriate directions to examine periods of sobriety where there is interplay between drug and alcohol addiction and mental health issues; (2) develop the record and re-contact Plaintiff's treating physicians regarding the impact of drug and alcohol use on Plaintiff's work-related limitations; (3) analyze all evidence from Plaintiff's mental health records; and (4) re-evaluate Plaintiff's explanations for his alleged non-compliance with treatment. See Report and Recommendation, Crawford v. Astrue, Civ. A. No. 08-1160 (E.D. Pa. Feb. 17, 2009).

Defendant Commissioner now raises three Objections to the Report and Recommendation. First, he asserts that the Magistrate Judge incorrectly rejected the ALJ's finding that Plaintiff's drug and alcohol abuse was a contributing factor material to a determination of disability. Second, Defendant contends that the Magistrate Judge improperly re-weighed the evidence and did not consider the record as a whole under the substantial evidence standard of review. Finally, Defendant argues that the Magistrate Judge improperly re-weighed the evidence related to Plaintiff's credibility.

2

## II.    STANDARDS OF REVIEW[3]

### A.    Standard for Judicial Review of an ALJ's Decision

It is well-established that judicial review of the Commissioner's decision is limited to determining whether "substantial evidence" supports the decision.  Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986).  "Substantial evidence 'does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (quoting Pierce v. Underwood, 487 U.S. 552, 564-565 (1988)).  In making this determination, a reviewing court may not undertake a *de novo* review of the Commissioner's decision and may not re-weigh the evidence of record.  Monsour, 806 F.2d at 1190.  In other words, even if the reviewing court, acting *de novo*, would have decided the case differently, the Commissioner's decision must be affirmed if it is supported by substantial evidence.  Id. at 1190-91; see also Gilmore v. Barnhart, 356 F. Supp. 2d 509, 511 (E.D. Pa. 2005) (holding that the court's scope of review is "limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact." (quoting Schwartz v. Halter, 134 F. Supp. 2d 640, 647 (E.D. Pa. 2001)).

### B.    Standard of Review on Objections to a Report and Recommendation

When a party makes a timely and specific objection to a portion of a report and recommendation by a United States Magistrate Judge, the district court is obliged to engage in *de novo* review of only those issues raised on objection.  28 U.S.C. § 636(b)(1) (2005); see also Sample

---

[3] The medical record, ALJ's findings, and statutory framework for assessing a disability claim were properly summarized by the Magistrate Judge.  Accordingly, the Court incorporates those portions of the Report and Recommendation by reference into this opinion.

v. Diecks, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989).  In so doing, the Court may "accept, reject, or modify, in whole or in part, the findings and recommendations" contained in the report.  28 U.S.C. § 636(b)(1).  The Court may also, in the exercise of sound judicial discretion, rely on the Magistrate Judge's proposed findings and recommendations.  See U.S. v. Raddatz, 447 U.S. 667, 676 (1980).

**III.    DISCUSSION**

**A.    Objection 1 - The Magistrate Judge Mistakenly Rejected the ALJ's Materiality Finding**

In his first Objection, the Commissioner challenges the Magistrate Judge's rejection of the ALJ's "materiality finding" – *i.e.*, that Plaintiff's substance abuse was a contributing factor material to the determination of disability.  As set forth in the ensuing discussion, the Court sustains this Objection.

As of January 1, 1997, the United States Congress mandated changes in the method for evaluating claimants suffering from both substance abuse and another disability.  Bryant v. Barnhart, Civ. A. No. 02-2708, 2003 WL 22245092, at *1 (E.D. Pa. Jul. 30, 2003).  The new Act required that "[a]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled."  Pub. L. No. 104-21, § 105(a)(1) (codified as amended 42 U.S.C. §§ 423(d)(2)(C) (1996)).  The "key factor" in determining whether a claimant's alcohol or drug abuse is a material contributing factor to the claimant's disability is "whether [the Commissioner] would still find [the claimant] disabled if [he or she] stopped using drugs or alcohol."  20 C.F.R. § 416.935(b)(1).  In making this determination, the disability must be evaluated independently of the substance abuse.  Id. at § 416.935(b)(2).  "If the claimant's limitations are not disabling after parsing out the substance abuse related factors, the substance

4

abuse is a material factor and the claimant is not eligible for benefits." Bryant, 2003 WL 22245092, at *2 "On the other hand, if the limitations are still disabling without the substance abuse, the claimant is eligible." Id.

Although the Third Circuit has declined to directly address who bears the burden with regard to the materiality analysis, other circuit courts, as well as district courts within this Circuit, have found that the plaintiff must prove disability without the effects of substance abuse. Brown v. Apfel, 192 F.3d 492, 498 (5th Cir. 1999); Pettit v. Apfel, 218 F.3d 901, 903 (8th Cir. 2000); Parra v. Astrue, 481 F.3d 742, 748 (9th Cir. 2007), cert. denied, 128 S. Ct. 1068 (2008); Doughty v. Apfel, 245 F.3d 1274, 1280 (11th Cir. 2001); Thomas v. Astrue, Civ. A. No. 08-632, 2008 WL 4589751, at *2 (E.D. Pa. Oct. 15, 2008); Reed v. Barnhart,  Civ. A. No. 07-5099, 2008 WL 2835331, at *8 (D.N.J. Jul 18, 2008); Lang v. Barnhart, Civ. A. No. 05-1497, 2006 WL 3858579 at *4 (W.D. Pa. Dec. 06, 2006); Brown v. Barnhart, Civ. A. No. 04-4679, 2006 WL 1479638, at * 2 (E.D. Pa. May 23, 2006).  An ALJ need not obtain expert evidence or seek a consultant's opinion when making a materiality determination. McGill v. Comm'r of Soc. Sec., 288 Fed. Appx. 50, 53 (3d Cir. 2008). Rather, an ALJ's conclusion that substance abuse is a contributing factor material to a finding of disability must simply be supported by substantial evidence. Shreve v. Astrue, Civ. A. No. 08-123, 2009 WL 130411, at *10 (W.D. Pa. Jan. 20, 2009).

The ALJ, in this case, reviewed Plaintiff's history of mental health treatment as follows:

The claimant's medical records reflect outpatient mental health evaluations and treatment at the WES Health Centers from February 2002 to January 2003, for major depressive disorder (moderate), major depressive disorder with psychosis (single episode), and alcohol use . . ., and again from August 2005 to June 2006, for major depression with psychosis, and schizoaffective disorder . . . .  The claimant's primary complaints were depression, insomnia, and hearing voices.  His reported GAF scores

varied from 51-60 in February 2002-January 2003, and from 52-58[4] in August 2005-June 2006. He spent two weeks in the Mirmont Treatment center for detoxification of alcohol (beer) and cocaine dependence, with additional diagnoses of major depressive disorder, recurrent, and psychosis, not otherwise specified, with a discharge GAF score of 50. He had a history of three prior drug/alcohol rehabilitation hospitalizations . . . . He was still using alcohol in August 2005, when he admitted to the WES intake interviewer that he had drunk 2 beers in the past week . . . . His primary care progress note in June 2006 indicated "(+) etoh" and "non-compliance" with his Combivir and Sustiva "cocktail" . . .. His formal objective (directly observed) mental status findings were typically minimal or normal/negative, even when admitted to Mirmont in August 2004. On June 16, 2006, it was reported that he "has not been on medications X8 months" and was experiencing insomnia, A/V/ hallucinations, and dysphoria.

(R. 20.) Based on this evidence, the ALJ found that when Plaintiff's "depressive/psychotic mental impairments, HIV+ impairment, and alcoholism are considered in combination, they arguably result in limitations that would satisfy the requirements for sections B2, B3, B4, and/or C1 and C3 [of Listing 12.09] as applicable to Listings 12.02 and/or 12.04 in Appendix 1, resulting in a finding of 'disability' when his substance abuse contributes to those limitations."[5] (Id. at 20 (emphasis in original).)

The ALJ, however, went on to determine that "in the absence of limitations from his substance abuse, the claimant's impairments do not meet or equal in severity any of the Listing criteria in Appendix 1," reasoning that:

In the absence of limitations from his substance abuse, the claimant's HIV+

---

[4] A Global Assessment of Functioning ("GAF") score of 51-60 indicates "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." Diagnostic and Statistical Manual of Mental Disorders, 32 (4th ed. 1994).

[5] Section 12.09 refers to "substance addiction disorders," which are characterized as "[b]ehavioral changes or physical changes associated with the regular use of substances that affect the central nervous system." 20 C.F.R. Pt. 404, Subpt. P, App. 1 at § 12.09. The ALJ found that Plaintiff arguably met the requirements of this Listing by satisfying the requirements of Listings 12.02 (organic mental disorders) and 12.04 (depressive syndrome).

6

encephalopathy and his depression/psychosis impairments would result [in] [no] more than "moderate" limitations with respect to any of the B1-B4 criteria for Listings 12.02 and/or 12.04, and would not satisfy any of the C1-C3 criteria for those Listings. Even with alcohol use reported in August 2005 and June 2006 . . . the claimant's GAF scores as assigned by his treating mental health professionals at the WES Health Center ranged as high as 55, 58, and 60, all denoting only "moderate" mental limitations. It is noted that at the initial determination level, a State agency review psychologist found that there was "insufficient evidence" of mental impairment for a medical disposition with respect to the claimant's mental status, as he had failed to attend two scheduled consultative examinations. No treating or examining mental health professional has provided any mental capacities assessment applicable to the claimant's work-related functioning.

(Id. at 20-21.) Discrediting the bulk of Plaintiff's testimony, the ALJ held that "[i]f the claimant

stopped the substance use, the claimant would have the residual functional capacity to perform" a

range of light and sedentary work with some mental limitations, a significant number of which such

jobs existed in the national economy. (Id. at 21, 23.) Ultimately, the ALJ concluded that "[b]ecause

the claimant would not be disabled if he stopped the substance use . . . the claimant's substance use

disorder(s) is a contributing factor material to the determination of disability," making him not

disabled within the meaning of the Social Security Act. (Id. at 24.)

In the Report and Recommendation, the Magistrate Judge deemed the ALJ's materiality

decision flawed in three respects. First, the Magistrate Judge found that the ALJ improperly based

her determination on the finding that Plaintiff's testimony was not credible. (R&R 10-11.) Second,

the Magistrate Judge asserted that the ALJ failed to review the record as a whole and neglected to

give consideration to the circumstances surrounding periods of abstinence. (Id. at 12-14.) Finally,

the Magistrate Judge determined that the ALJ failed to develop the record by re-contacting

Plaintiff's treating doctors or otherwise obtaining an expert opinion as to materiality. (Id. at 14-17.)

The Commissioner now challenges each of the Magistrate Judge's rationales.

1.   **Whether the Materiality Determination Was Improperly Based on a Finding that Plaintiff's Testimony Was Not Credible**

In the first portion of the Report and Recommendation's rejection of the ALJ's materiality determination, the Magistrate Judge stated that, "[i]t appears that the ALJ's basis for such findings was based upon her finding that plaintiff's testimony was not credible." (Id. at 11.) The Court respectfully finds this statement to be in error.

As discussed in detail above, the ALJ set forth a full analysis for her materiality finding under her discussion of step three of the sequential analysis. The discussion focused almost entirely on Plaintiff's mental health treatment, mental health evaluations, Global Assessment of Functioning scores, and treatment for substance abuse. Although the ALJ briefly referenced Plaintiff's lack of credibility as to both the extent of his functional limitations from depression and the extent and duration of his alcohol abuse, the foundation for the ALJ's materiality decision was clearly grounded on a finding that the medical evidence of record did not show a disabling mental impairment, even with substance abuse. As such, the Court declines to order remand on this basis.

2.   **Whether the Materiality Determination Was Flawed Due to Its Failure to Consider Plaintiff's Periods of Abstinence**

The Magistrate Judge's next basis for rejecting the ALJ's materiality determination asserted that "the ALJ failed to follow EM-96200's directive that where the claimant has drug and alcohol addiction in conjunction with mental impairments, consideration must be given to the length of the period of abstinence, how recently it occurred, and whether there may have been any increase in the limitations and restrictions imposed by[] the other mental impairments since the last period of abstinence." (R&R 12 (internal quotations omitted).) The Magistrate Judge went on to note the existence of evidence indicating that Plaintiff remained abstinent for some periods of time. (Id. at

8

13.) Because the ALJ never made a specific finding that Plaintiff abstained from substance abuse

for any period of time, and in fact explicitly rejected Plaintiff's contentions of sobriety, the

Magistrate Judge stated that "it simply cannot be said that she adequately analyzed these periods of

alleged sobriety in accordance with the requirements of EM96-200." (Id. at 13.)  Without any

specific evaluation, the Magistrate Judge determined that a reviewing court had "no way of knowing

whether the ALJ gave the periods of alleged abstinence adequate consideration." (Id. at 13-14.)

The Commissioner objects to this conclusion, arguing that the ALJ's reasoning complied with her

obligations under applicable Social Security rules and regulations.

On August 30, 1996, the Commissioner of Social Security issued Emergency Teletype No.

96 to aid adjudicators in distinguishing actual disabilities from substance induced disabilities.

Social Security Administration, Questions and Answers Concerning DAA from the July 2, 1996

Teleconference, No. EM-96200 (Aug. 30, 1996) available at https://secure.ssa.gov/apps10/ (follow

"EMs" hyperlink; then follow "EM-96200" hyperlink) ("EM-96200").  The teletype states, in

pertinent part:

> There will be cases in which the evidence demonstrates multiple impairments,
> especially cases involving multiple mental impairments, where the [medical or
> psychological consultant] cannot project what limitations would remain if the
> individuals stopped using drugs/alcohol. . . . Since a finding that [drug or alcohol
> dependency] is material will be made only when the evidence establishes that the
> individual would not have been disabled if he/she stopped using drugs/alcohol, the
> DE [disability examiner] will find that [drug and alcohol dependency] is not a
> contributing factor material to the determination of disability.
> * * *
> When it is not possible to separate the mental restrictions and limitations imposed by
> [drug or alcohol dependency] and the various other medical disorders shown by the
> evidence, a finding of "not material" would be appropriate.

Id. at Responses to Question 27 and Question 29.  The Teletype goes on to indicate that, "[t]he most

useful evidence that might be obtained in such cases is that relating to a period when the individual

was not using drugs/alcohol, [and] consideration must be given to the length of the period of abstinence, how recently it occurred, and whether there may have been any increase in the limitations and restrictions imposed by the other mental impairments since the last period of abstinence." Id. at Resp. to Question 29. This latter directive is consistent with the mandate of 20 C.F.R. § 416.935, which requires the ALJ to "evaluate which of [Plaintiff's] current physical and mental limitations . . . would remain if [Plaintiff] stopped using drugs or alcohol." 20 C.F.R. § 416.935(b)(2). Thus, where there is evidence in the record of periods of abstinence, such evidence must be considered in making a materiality determination. See Fahy v. Astrue, Civ. A. No. 06-366, 2008 WL 2550594, at *5 (E.D. Pa. Jun. 26, 2008) ("ALJ's failure to discuss these significant periods of abstinence contravenes the Teletype's directive that 'consideration must be given to the length of the period of abstinence' as well as the directive contained in 20 C.F.R. § 416.935 requiring the ALJ to 'evaluate which of [Plaintiff's] current physical and mental limitations . . . would remain if [Plaintiff] stopped using drugs or alcohol.'") (citing Salazar v. Barnhart, 468 F.3d 615, 624 (10th Cir. 2006); Stuart v. Barnhart, Civ. A. No. 02-2142, 2003 WL 1054014, at *3 (D. Kan. 2003)).

While the Report and Recommendation correctly defines the law with respect to this above directive, it misapplies it to the ALJ's opinion in two respects. First, the Magistrate Judge's rejection of the ALJ's materiality analysis fails to give the requisite deference to the ALJ's factual determination by presupposing that there were periods of abstinence that the ALJ should have discussed. The ALJ engaged in an unquestionably thorough review of all of the medical evidence, spanning four pages of her decision, and generally rejected any sustained periods of abstinence by Plaintiff. (R. 16-20.) The record as a whole reveals this finding to be well-supported by substantial

10

evidence. Plaintiff's medical record begins in February of 2002 and reflects two visits for mental health treatment. (Id. at 73-81.) The next time Plaintiff returned for treatment in January 2003, he reported two previous detoxes and admitted to current alcohol use. (Id. at 70-72.) He sought no further mental health treatment until August 12, 2004, when he entered Mirmont Treatment Center for substance abuse. (Id. at 93-94.) The discharge summary from Mirmont indicated that Plaintiff had been drinking excessive amounts of beer every day for the last twenty-two years and using cocaine up until August of 2004 – suggesting no period of abstinence to date.[6] (Id.) Although Plaintiff testified that he stopped using drugs after leaving Mirmont (id. at 189), he admitted at his mental health appointment, on August 4, 2005, to continuing his use of alcohol, most recently a week earlier.[7] (Id. at 111.) While there was no mention of drugs or alcohol from August 2005 to October 2005, during the time when Plaintiff was getting regular mental health treatment at the WES Center, there is equally no clear evidence that he was abstaining at that time. From October 2005 to the administrative hearing in December 2006, the lone mental health treatment record, dated June 16, 2006, contained no mention of alcohol.[8] (Id. at 130-31.) During a July 2006 visit to his

---

[6] In his administrative hearing testimony, Plaintiff rejected the report from Mirmont about his alcohol use, saying that whoever interviewed him got the information wrong. (R. 189-90.) He also stated that although he used drugs, he was never addicted, and that he was only drinking a six pack every two to three days. (Id.) He claimed to have stopped drug use after leaving Mirmont in August 2005 and to only occasionally drinking beer around holidays, such as the previous Fourth of July. (Id. at 190-91.) As discussed in detail later in this opinion, the ALJ rejected this testimony as not credible.

[7] Two treatment notes from Plaintiff's primary care physician, dated May 3 and May 27, 2005, have a notation indicating no current alcohol abuse. (Id. at 140-43.) As noted above, however, the next mental health treatment note in August 2005, indicates recent alcohol use.

[8] That progress note contained a pre-printed question asking, "Have you had any alcoholic beverages or illicit substances since your last visit?" (Id. at 131.) Neither the "Yes" box nor the "No" box was checked. (Id.)

11

primary care physician, however, Plaintiff admitted to drinking a six pack of beer per week. (Id. at

170.) Finally, at the hearing, on December 1, 2006, Plaintiff again admitted to drinking over the

Fourth of July and randomly on other occasions. (Id. at 190-91.)

In short, notwithstanding the Magistrate Judge's statement that "there was evidence

indicating that plaintiff remained abstinent for some periods of time," (R&R 13), there is equally, if

not more, substantial evidence to support the ALJ's rejection of any obvious period of abstinence.

Given the Court's deferential standard of judicial review, we must affirm the ALJ's conclusion.

Second, even in the event the record can be read to find a period of abstinence occurring

from August 2005 to early 2006,[9] the ALJ's decision adequately finds that Plaintiff's mental

impairment, standing alone, caused no more than moderate limitations on his ability to function.

The ALJ need not "use particular language or adhere to a particular format in conducting his

analysis." Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004). "The only requirement is that,

reading the ALJ's decision as a whole, there must be "sufficient evidence and analysis to allow for

meaningful judicial review." Rivera v. Comm'r of Soc. Sec., 164 Fed. Appx. 260, 262 (3d Cir.

2006).

The ALJ's discussion of periods of abstinence, albeit not artfully drafted, complies with her

obligations under EM-96200 and allows for adequate judicial review.   The ALJ noted that, during

the entire period covered by the record, Plaintiff's mental impairment never caused any marked

impairments even despite his history of alcohol and substance abuse. (R. 19.) During the possible

period of abstinence, from August 2005 to early 2006, the ALJ found that Plaintiff's reported GAF

---

[9] At oral argument before the Magistrate Judge on February 4, 2009, defense counsel conceded that Plaintiff may have abstained from alcohol during a brief period of time in late 2005. (R&R 13 (citing Tr. Oral Arg. 2/4/05, at 6-7).)

scores varied from 52-58, reflecting only moderate symptoms. (Id. at 20.) Although the ALJ recognized that Plaintiff still had primary complaints of depression, insomnia, and auditory hallucinations, she remarked that his mental status findings were "typically minimal or normal/negative" and without any significant abnormalities. (Id. at 19-20.) Indeed, the Court independently notes that during that period of treatment and purported abstinence, Plaintiff's claimed symptoms of suicidal thoughts and auditory hallucinations gradually improved and Plaintiff was characterized as friendly and talkative. (Id. at 127-29.) "Viewed as a whole, a reasonable mind might accept [the record evidence] as adequate to support the ALJ's findings that [Plaintiff's] behavioral and functional problems were attributable to [drug and alcohol abuse], and that in the absence of [drug and alcohol abuse], [he] would not be disabled." McGill, 288 Fed. Appx. at 53 (undertaking an independent review of the record to find support for the ALJ's otherwise unexplained materiality finding).

To remand solely to have the ALJ re-draft her materiality finding in adherence to a precise format specifically referencing periods of abstinence – particularly in light of the record before us – would simply exalt form over substance. Neither the Social Security Regulations nor the controlling jurisprudence mandate such a result. See Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) (stating that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." ).

    **3.**    **<u>Whether the ALJ's Materiality Analysis Was Flawed Due to the ALJ's Failure to Develop the Record and Obtain a Medical Statement Regarding Plaintiff's Work-Related Limitations or the Materiality Analysis</u>**

The Magistrate Judge's final ground for rejecting the ALJ's materiality determination

suggests that the ALJ failed to develop the record by either obtaining a treating source opinion regarding Plaintiff's work-related limitations in the absence of drugs and alcohol, or requesting an expert opinion to separate the effects of Plaintiff's drug and alcohol addiction. Again, this Court must respectfully disagree.

As a primary matter, although the Magistrate Judge correctly found that an ALJ has a duty to develop a full and fair record, even with regard to a materiality determination, Ventura v. Shalala, 55 F.3d 900, 902 (3d Cir. 1995), he relied on the incorrect premise that a materiality determination must be based on expert testimony. In the recent case of McGill v. Comm'r of Soc. Sec., the Third Circuit expressly found no requirement in the statute, implementing regulations, or internal guidelines that the materiality finding must be based on expert psychiatric opinion evidence. 288 Fed. Appx. 50, 53 (3d Cir. 2008). Rather, the materiality finding need only rest on substantial evidence. Id. Several decisions from this Court have since reaffirmed that principle. See Shreve v. Astrue, Civ. A. No. 08-123, 2009 WL 130411, at *9 (E.D. Pa. Jan. 10, 2009) ("Plaintiff's contention that expert opinion evidence is necessary to establish materiality has specifically been rejected by the Third Circuit."); Stitt v. Astrue, Civ. A. No. 07-1346, 2008 WL 4412092, at *5 (W.D. Pa. Sep. 25, 2008) (noting that McGill rejected the assertion that the Commissioner must base a materiality determination on expert psychiatric opinion evidence); accord Doughty v. Apfel, 245 F.3d 1274, 1280-81 (11th Cir. 2001).

Second, the Magistrate Judge mistakenly held that it was incumbent on the ALJ to re-contact Plaintiff's treating doctors to obtain opinions on Plaintiff's work-related limitations in the absence of the drug and alcohol addiction. In pursuing a disability claim under the Act, the burden is solely upon the claimant to prove the existence of a disability. 42 U.S.C. § 423(d)(5); see also Kent v.

14

Schweiker, 710 F.2d 110, 114 (3d Cir. 1983).  The claimant must provide the medical evidence

which indicates that there is an impairment and the extent of its severity. 42 U.S.C. § 423(d)(5)

("[a]n individual shall not be considered to be under a disability unless *he furnishes* such medical

and other evidence of the existence thereof . . ." (emphasis added)); see also Rotshteyn v. Massanari,

158 F. Supp. 2d 525, 530-31 (E.D. Pa. 2001).  Under 20 C.F.R. § 416.912(e), the ALJ is only

required to seek additional or clarifying information from a treating doctor if the information already

in its possession, whether or not contradictory, is "inadequate for [the ALJ] to determine whether

[the applicant] is disabled or not." Id.; see also Becker v. Barnhart, Civ. A. No. 03-6374, 2005 WL

747047, at *5 (E.D. Pa. Apr. 1, 2005); Truett v. Barnhart, Civ. A. No. 04-5376, 2005 WL 3216741,

at *4 (E.D. Pa. Nov. 23, 2005).  The regulation goes on to note that "[w]e will seek additional

evidence or clarification from your medical source when the report from your medical source

contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary

information, or does not appear to be based on medically acceptable clinical and laboratory

diagnostic techniques.  20 C.F.R. § 416.912(e)(1).  Where, however, "the ALJ can make the

determination based on the evidence in the ALJ's possession, even if 'inconsistent' evidence is

presented, the ALJ has the discretion to make that determination." Truett, 2005 WL 3216741, at *4.

Contrary to the Magistrate Judge's conclusion that the absence of a medical opinion

regarding work-related limitations creates a situation where a physician's report "does not contain

all the necessary information," (R&R 15), the regulations explicitly state that the lack of the medical

source statement, in a physician's report, about what a claimant can do despite his or her

impairments will not make the report incomplete. 20 C.F.R. § 416.913(b)(6).  Indeed, an ALJ,

faced with an inadequate record, has the discretion to either recontact treating physicians, ask the

15

claimant to undergo a consultative examination, or ask the claimant or others for more information. 20 C.F.R. § 416.927(c)(3). "If, [however], the ALJ can make a decision based on the existing evidence of record, he has the discretion to do so." Mojica v. Astrue, Civ. A. No. 06-2900, 2007 WL 4443247, at *3 (E.D. Pa. Dec. 18, 2007).

The ALJ, in this case, attempted to schedule Plaintiff for two consultative examinations. Plaintiff failed, without explanation, to attend either examination.[10] In lieu of attempting to schedule a third examination, the ALJ properly exercised her discretion and determined that the remaining evidence was sufficient to make a materiality finding. As noted above, that finding was well-supported by substantial evidence of record. Notwithstanding the duty to develop the record, nothing in the regulations requires an ALJ to jump through hoops to find a disability where the Plaintiff has not proven one. The Court thus sees no basis to remand for a new materiality analysis.[11]

**B.**     **Objection 2 - The Magistrate Judge Incorrectly Found that the ALJ Failed to Analyze All the Evidence**

The Commissioner's second Objection challenges the Magistrate Judge's finding that the ALJ failed to consider all of Plaintiff's records from the WES Health Centers. Specifically, the

---

[10] Although the ALJ has authority to deny benefits on that ground alone, the ALJ took the more prudent and acceptable course of denying the claim based on the remaining evidence. Williams v. Barnhart, Civ. A. No. 04-5738, 2006 WL 724546, at *4 (E.D. Pa. Mar. 17, 2006). The mere absence of that consultative examination did not render the record incomplete.

[11] The Report and Recommendation states that the ALJ expressly noted the insufficiency of evidence in her materiality analysis. (R&R 17 (citing R. 20, 22).) This Court's independent reading of the opinion, however, yields a different interpretation. The ALJ simply noted that the State Agency Review Psychologist, when asked to complete an analysis of Plaintiff's mental disability in May 2005, was unable to render an opinion due to "insufficient evidence." (R. 20, 22.) At no point did the ALJ find that the completed record, through December of 2006, offered an insufficient basis on which to make a disability determination

16

Magistrate Judge determined that the ALJ "did not mention or analyze the evidence concerning plaintiff's suicidal and homicidal ideations in any portion of her opinion." (R&R 19.) Without any analysis of this evidence, the Magistrate Judge concluded that proper judicial review was not possible. (Id.)

The Court must again respectfully disagree. As a primary matter, the Magistrate Judge misspeaks as to the ALJ's disregard of evidence. Plaintiff's reports of suicidal and homicidal ideas appear in three different notations from WES dated January 28, 2003 (R. 70-72), August 4, 2005 (id. at 110-124), and September 12, 2005.[12] (Id. at 125-126.) All three of these records were explicitly mentioned in the ALJ's opinion and, as the Magistrate Judge agrees, the ALJ discussed the other symptoms noted in those reports. (Id. at 19-20.) The ALJ's failure to acknowledge specific statements in that evidence is quite different than failing to consider the evidence altogether.

Moreover, the Court finds no error in the ALJ's failure to mention these precise symptoms in reaching her finding of not disabled. "There is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record." Hur v. Barnhart, 94 Fed. Appx. 130, 133 (3d Cir. 2004). An ALJ need not "cite all evidence a claimant presents, including evidence that is irrelevant to [his] case." Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 204 (3d Cir. 2008). Only where the ALJ rejects conflicting probative evidence must the ALJ explain his findings and the reasoning for his conclusions. Walker v. Comm'r of Soc. Sec., 61 Fed. Appx. 787, 788-89 (3d Cir. 2003). Where the evidence at issue has not been rejected by the ALJ, or it is either not probative or not conflicting,

---

[12] Notably, Plaintiff also attempted suicide once in 1994. This event, however, significantly predates the period of alleged disability and, as such, is irrelevant for purposes of this case.

17

the ALJ need not further discuss it. Id. at 789.

While the ALJ, in the interests of comprehensiveness, should have perhaps mentioned Plaintiff's reported suicidal thoughts, remand for additional analysis of these notations is simply unwarranted on the face of the record. As indicated above, Plaintiff first reported suicidal/homicidal ideation without plan on January 28, 2003. (R. 70-72.) From January 2003 to August 2005, the record contains reports from nine visits to his primary care physician, one visit to an orthopedist, and a two-week admission to rehab for substance abuse – none of which contain complaints of suicidal or homicidal ideation. (Id. at 83-87, 93-94, 133-143, 152.) Upon return to his treating psychiatrist, after a thirty month lull in mental health treatment, Plaintiff again mentioned his suicidal thoughts, once during intake on August 4, 2005, and once in a follow-up visit on September 12, 2005. (Id. at 119, 127.) Thereafter, in his last three mental health treatment sessions of record – on September 30, 2005, October 12, 2005, and June 16, 2006 – Plaintiff expressly denied having any suicidal thoughts. (Id. at 128-31.) Likewise, at the administrative hearing, Plaintiff did not suggest having any suicidal tendencies. In light of the fact that the mention of these symptoms in the record was sparse and, at crucial periods, flatly denied by Plaintiff, they did not need to be either discussed or refuted by the ALJ.

Even assuming that, on remand, the ALJ were to discuss and fully credit Plaintiff's suicidal ideation during the periods reflected by the treatment notes, the Court cannot discern what impact these apparently fleeting symptoms would have on the ALJ's residual functional capacity assessment and/or disability determination. See Keiderling v. Astrue, Civ. A. No. 07-2237, 2008 WL 2120154, at *9 (E.D. Pa. May 20, 2008) ("Social Security regulations are concerned not with a specific diagnosis, but rather what the functional limitations resulting from that impairment are and

18

how they impact an individual's ability to perform in the workplace."). While a hypothetical to a vocational expert must include all of the claimant's credibly established limitations, it "does not require that the vocational expert be apprised of limitations which have been determined not to affect the claimant's [residual functional capacity]." Covone v. Comm'r Soc. Sec., 142 Fed. Appx. 585, 587 (3d Cir. 2005); see also Wimberly v. Barnhart, 128 Fed. Appx. 861, 863 (3d Cir. 2005) ("a condition that does not result in any functional impairment is not relevant to the RFC analysis.") Certainly, given the fact that these suicidal thoughts had no clear effect on Plaintiff's work-related abilities and had not manifested themselves for at least a year and a half prior to the administrative hearing, it would not have been proper for the ALJ to include them in her hypothetical to the vocational expert. Given the harmless error – if error at all – in the ALJ's failure to mention these symptoms, the Court finds no ground for remand. See Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005) (holding that where error by ALJ is harmless and would not affect the outcome of the case, remand is not warranted).

**C.    Objection 3 - The Magistrate Judge Improperly Rejected the ALJ's Credibility Analysis**

Defendant's final Objection is directed towards the Magistrate Judge's rejection of the ALJ's credibility analysis. Specifically, the ALJ found Plaintiff only "minimally credible" based in part on Plaintiff's "repeated, extreme and overblown characterizations of his conditions," denial of his continued substance abuse, claim of compliance with medication despite contrary doctors' notes, and stability while on medication. (R. 21-22.) The Magistrate Judge deemed the ALJ's analysis flawed because: (1) Plaintiff's denial of alcoholism could be part of his disease; (2) mere stability on medication does not support an ability to work; (3) the ALJ failed to consider Plaintiff's explanations for his non-compliance with treatment; and (4) the ALJ neglected to consider the side

19

effects of Plaintiff's medications. (R&R 20-23.)   The Defendant now objects on the ground that the Magistrate Judge improperly re-weighed the evidence without deferring to the determinations of the ALJ as fact-finder.  Given the deferential standard of review applied to well-reasoned credibility determinations, the Court must again respectfully disagree with the Magistrate Judge.

It is well-established that an ALJ is required to "give serious consideration to a claimant's subjective complaints of pain [or other symptoms], even where those complaints are not supported by objective evidence." Mason v. Shalala, 994 F.2d 1058, 1067 (3d Cir. 1993) (citing Ferguson v. Schweiker, 765 F.2d 31, 37 (3d Cir. 1985)).  Objective evidence of the symptoms themselves need not exist, although there must be objective evidence of some condition that could reasonably produce them. Green v. Schweiker, 749 F.2d 1066, 1070-71 (3d Cir. 1984).  Where medical evidence supports a claimant's complaints, the "complaints should then be given 'great weight' and may not be disregarded unless there exists contrary medical evidence." Mason, 994 F.2d at 1067-68. The ALJ, however, "has the right, as the fact finder, to reject partially, or even entirely, such subjective complaints if they are not fully credible." Weber v. Massanari, 156 F. Supp. 2d 475, 485 (E.D. Pa. 2001) (citing Baerga v. Richardson, 500 F.2d 309, 312 (3d Cir. 1974)).

Under 20 C.F.R. § 416.929(c)(3), the kinds of evidence that the ALJ must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements include the individual's daily activity; location, duration, frequency, and intensity of the individual's symptoms; factors precipitating and aggravating the symptoms; the type, dosage, effectiveness, and side effects of medication taken to alleviate the symptoms; treatment, other than medication, received for relief of the symptoms; any non-treatment measures the individual uses to relieve pain or symptoms; and other factors concerning the individual's functional limitations and

20

restrictions due to pain or other symptoms. Id. Moreover, the ALJ should account for the claimant's statements, appearance, and demeanor; medical signs and laboratory findings; and physicians' opinions regarding the credibility and severity of plaintiff's subjective complaints. Weber, 156 F. Supp. 2d at 485 (citing Social Security Ruling ("SSR") 96-7p, 1996 WL 374186 (S.S.A. 1996)). Ultimately, the ALJ's "'determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.'" Schwartz v. Halter, 134 F. Supp. 2d 640, 654 (E.D. Pa. 2001) (quoting SSR 96-7p, supra; Schaudeck v. Comm'r of Soc. Sec. Adm'n, 181 F.3d 429, 433 (3d Cir. 1999)).

In support of her finding that Plaintiff was not credible, the ALJ, in this case, provided a thorough and well-reasoned discussion, which considered many of the above-enumerated factors. First, an ALJ should consider "[t]he degree to which the individual's statements are consistent with the medical signs and laboratory findings and other information provided by medical sources, including information about medical history and treatment." SSR 96-7p, 1996 WL 374186, at *5; see also 20 C.F.R. § 416.927(c)(2) (noting that objective medical evidence is a "useful indicator" to help the ALJ make conclusions about "the intensity and persistence" of a plaintiff's symptoms and pain and the effect of those symptoms on the plaintiff's ability to work). The ALJ, in this case, acknowledged Plaintiff's claim of almost total disability due to his conditions, but discredited such extreme allegations in light of the patent absence of objective medical findings that could reasonably cause such severe symptoms. (R. 22.) Indeed, the ALJ expressly noted that between February 2004 and June 2006, there was no reference to any significant evaluation or treatment for

21

any spinal disorder; no mention of specific ambulatory deficits; no documented persistent complaints of severe weight loss, weakness, or fatigue; no manifestation of HIV+; no significant objective mental status abnormalities of cognitive dysfunction or memory deficits; and nothing more than moderate mental limitations from mental status examinations. (Id. at 17-20.) Such a determination finds ample support from the record.

Second, the regulations provide that an individual's statements "may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." SSR 96-7p, 1996 WL 374186, at *7; see also Lozado v. Barnhart, 331 F. Supp. 2d 340 n.23 (E.D. Pa. 2004). The ALJ, in this case, determined that the medical records for Plaintiff's physical impairments showed "minimal (medication) and inconsistent (gaps, non-compliance) treatment for HIV+, bilateral shoulder tendonitis; degenerative disc disease of the lumbar spine." (R. 21.) Further, she found that the records for his mental impairments "also show minimal (medication) and inconsistent (gaps, non-compliance) treatment for HIV+ encephalopathy, depression/psychosis, and drug addiction/alcoholism." (Id.) As discussed in great detail above, a finding of such gaps in treatment is well-supported by the record, particularly given the multi-month to multi-year breaks between mental health visits, together with doctors' notations that Plaintiff had poor compliance history and potential. (Id. at 70-72,119, 168.)

Moreover, and contrary to the Magistrate Judge's findings, the ALJ expressly acknowledged and discussed Plaintiff's explanations for his non-compliance with and gaps in treatment. As to his gaps in mental health care, the ALJ clearly referenced Plaintiff's statement that he does not go regularly for mental health treatment "because of transportation problems, as the clinic is about a

22

mile from his house, and as he has had physical health problems." (Id. at 19, 192-93.)  Nonetheless, she rejected that explanation based on (1) the fact that the clinic was only a mile from his house; (2) Plaintiff's later statement that he used public transportation; (3) Plaintiff's ability to attend numerous medical appointments with his primary care physician, while foregoing all mental health treatment; and (4) the absence of any record evidence of a specific ambulatory deficits.  (Id. at 18.) As to prescribed medication regimens, the ALJ noted that Plaintiff did not purport to explain noncompliance by reference to any medicinal side effects.  Rather, he repeatedly claimed that he took his medicine "faithfully" and flatly denied the doctors' statements of record that he was non-compliant.  (Id. at 194-95).  The ALJ properly chose to credit the medical evidence over that of Plaintiff's contrary testimony.   As this credibility determination finds substantial support from the record, the Court is bound to accept it.

Finally, "the ALJ is expressly empowered to draw negative inferences, even concerning the claimant's statements about his subjective pain, from a lack of consistency between the claimant's various statements or between his statements and the medical evidence." Vitatoe v. Barnhart, Civ. A. No. 01-831, 2003 WL 21640374, at *9 (D. Del. Jul. 10, 2003), aff'd 96 Fed. Appx. 821 (3d Cir. 2004); see also 20 C.F.R. 416.929(c)(4) ("[w]e will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence. . . .").  Consistent with such a directive, the ALJ, in this case, noted:

> [L]ittle weight can be accorded to [Plaintiff's] adamant denials of continued substance abuse and claims of treatment compliance (he "was never addicted to drugs," and he believes the report of his 3-4 drug/alcohol rehabilitation admissions to be "incorrect," and he only went into drug/alcohol rehabilitation as a "vacation," and he has "stopped drinking," and the last time he had "a drink" was "around the holidays," and he "takes his medication faithfully").  When the claimant was confronted with statements in various Doctors' medical reports regarding claimant's substance abuse and hospitalizations and rehabs . . ., the claimant boldly stated that

> the Doctors' reports were not accurate. This type of denial, in the face of repeated reports from different sources to the contrary, is not believable and shows claimant not to be forthcoming in his testimony. These extreme allegations are not reflected in or supported by any reasonable interpretation of his medical documentation.

(R. 22.) Although courts have found that "a claimant's denial of alcoholism is part of the disease," Miller v. Barnhart, Civ. A. No. 01-052, 2002 WL 32348504, at *8 (E.D. Pa. Jan. 31, 2002), Plaintiff's denial of, not only his substance abuse, but his documented treatment for that abuse suggested more than alcoholism-induced dishonesty.[13] Given that the regulations permit an ALJ to discredit a claimant's testimony based on such inconsistencies, and in light of the other factors on which the ALJ relied, the Court finds no error in the ALJ's analysis.

"[I]t is well within the discretion of the Secretary to evaluate the credibility of a plaintiff's testimony and to render an independent judgment in light of the medical findings and related evidence regarding the true extent of such disability." Alexander v. Shalala, 927 F. Supp. 785, 795 (D.N.J. 1995), aff'd, 85 F.3d 611 (3d Cir. 1996). Contrary to the Magistrate Judge's conclusion, the ALJ conducted an in-depth evaluation of the severity of Plaintiff's subjective complaints. As this assessment was both thorough and supported by substantial evidence, the Court must affirm it.

## IV.    CONCLUSION

In short, the Court recognizes that the Magistrate Judge may have properly reached a different conclusion at the administrative stage. At this level of judicial consideration, however, the Court's scope of review is "limited to determining whether the Commissioner applied the correct

---

[13] Notably, the R&R, while citing Miller, disregards the other proposition in that case that "statements regarding periods of sobriety made by a known abuser of drugs and alcohol [are] not reliable because denial was a hallmark characteristic of substance abusers." Id. at *8. Giving this principle credence would provide support for the ALJ's earlier finding that there were no obvious periods of abstinence.

legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact." Gilmore v. Barnhart, 356 F. Supp. 2d 509, 511 (E.D. Pa. 2005) (quoting Schwartz v. Halter, 134 F. Supp.2d 640, 647 (E.D. Pa. 2001)).  Upon consideration of the record as a whole, this Court finds that the ALJ issued a thorough and well-reasoned decision that complied with all of the mandates under the pertinent Social Security Regulations.  Further, the ALJ's conclusions were well-supported by substantial evidence.  Any minor missteps were at most harmless error that would not change the outcome of this case.  Given such conclusions, the Court respectfully sustains the Objections and affirms the decision of the ALJ.